IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SUSAN LOPEZ, as personal representative
of the estate of Marcos Lopez, and SUSAN
LOPEZ, on her own behalf, and as guardian
of her minor children NICHOLAS LOPEZ
and ANALISA LOPEZ,

    Plaintiffs,

v.                                                                              CIV 11-633 GBW/RHS

GEICO INSURANCE COMPANY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant's Motion for Partial Summary Judgment on Plaintiffs' Claims for Underinsured Motorist Benefits ("Defendant's Motion"). *Doc. 52.* The motion being fully briefed and the Court being fully advised, the Court finds that the Motion should be denied.

### *Background*

On May 2, 2009, Susan Lopez and her three minor children, Marcos Lopez, Nicholas Lopez, and Analisa Lopez, were passengers in a vehicle driven by Robert Walker.[1] *Doc. 47* ¶ 9. According to a police report, due to Mr. Walker's negligence, Mr. Walker lost control of the vehicle causing the "vehicle [to] hit dirt at the edge of the

---

[1] Certain background facts have been culled from Plaintiffs' Amended Complaint. *See doc. 47.* The facts cited are neither contravened in the instant motion nor essential to the Court's holding herein and thus the Court states them without expressing any stance as to their veracity.

road and . . . roll[ ]over." *Id.* ¶ 14. Marcos Lopez was ejected from the vehicle and died. *Id.* ¶ 19. Susan, Nicholas, and Analisa Lopez sustained bodily injuries in the accident as well. *Id.* ¶ 22. Plaintiffs also suffered various emotional injuries. *See, e.g., doc. 47* at 4 ¶ 53; *see also doc. 52* at 4-5 ¶¶ 7, 11, 15.

Mr. Walker was insured by Defendant GEICO Insurance Company ("Defendant"). *Doc. 52* at 3 ¶ 2; *see also doc. 47* ¶ 24. Pursuant to the insurance agreement, Mr. Walker had liability policy limits of $100,000/$300,000[2] and stacked uninsured/underinsured motorist benefits of $300,000/$900,000.[3] *See doc. 52* at 3 ¶ 2; *see also doc. 47* ¶ 24. That coverage notwithstanding, Plaintiffs contend that Defendant originally advised them that the stacked, uninsured/underinsured benefits were $75,000/$150,000. *See doc. 47* ¶¶ 25-27.

Defendant hired an attorney to negotiate the accident claims with Plaintiffs. *Id.* ¶ 30. Defendant's attorney sought a release of all claims against Defendant on July 31, 2009. *Id.* ¶ 31. Plaintiffs retained counsel after receiving the communications attempting a settlement. *Id.* ¶ 33.

---

[2] When referring to the insurance contract terms, the first number refers to the "each person" limit and the second number refers to the "each occurrence" limit. *See doc. 52*, Ex. A at 2.

[3] As explained in Plaintiff's complaint, "stacking" refers to "the combining of Uninsured/Underinsured Motorist coverages provided in an insurance policy covering different vehicles." *Doc. 47* ¶ 26. Because Mr. Walker had three covered vehicles, (*see doc. 52*, Ex. A at 2; *doc. 47* ¶ 25), any number attached to an uninsured/underinsured limitation would be tripled. Thus, the undisputed factual proffer of $300,000/$900,000 is based upon three cars at $100,000/$300,000 each. *See id.* Although Plaintiffs contend that Defendant wrongfully informed them of a lower uninsured/underinsured benefit prior, (*see doc. 47* at ¶¶ 25-27; *see also doc. 59* at 2 n.1), the parties do not dispute that the proper uninsured/underinsured limits were $100,000/$300,000 per vehicle stacked to $300,000/$900,000. *See doc. 52* at 3 ¶ 2; *see also doc. 47* ¶ 24.

Due to physical injuries sustained in the accident, Susan Lopez incurred medical bills of $4,175.58.  *Doc. 52* at 3 ¶ 6.  She eventually settled her individual claims for $100,000.  *Id.* at 4 ¶ 8.  Nicholas Lopez incurred medical bills of $2,190.  *Doc. 52* at 4 ¶ 10.  Analisa Lopez likewise incurred medical expenses of $2,975.  *Id.* at 5 ¶ 15.  Nicholas and Analisa's claims were settled in a court-approved settlement for $32,500 each.  *Id.* at 4 ¶ 12, *id.* at 5 ¶ 15.

As a result of the belief that the settlement amounts were inadequate and because of their stance that the earlier, lower explanation of uninsured/underinsured benefits was actionable, Plaintiffs filed suit against Defendant in the Second Judicial District Court in Bernalillo County, New Mexico.  *See doc. 1* ¶ 1.  Defendant removed the case to this Court on July 18, 2011.  *Id.*

On March 6, 2012, Defendant moved for "summary judgment on Plaintiffs' claims seeking UIM benefits."  *Doc. 52*.  Briefing is complete and the Court has held a hearing on the matter.  *Docs. 59, 64, 65, 69*.

## *Analysis*

Under Federal Rule of Civil Procedure 56(a), this Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case."  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d

887, 891 (10th Cir. 1991) (internal quotation marks omitted). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record], together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.") (internal quotation marks omitted). Once the movant meets this burden, Rule 56(c) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993).

"An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted). "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1)(A).

When reviewing a motion for summary judgment, the court should keep in mind three principles. First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. *See Liberty Lobby*, 477 U.S. at 249. Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light

4

most favorable to the non-moving party.  *See Hunt v. Cromartie*, 526 U.S. 541, 550–55 (1999).  Third, the court cannot decide any issues of credibility.  *See Liberty Lobby*, 477 U.S. at 255.  "[T]o survive the . . . motion, [the nonmovant] need only present evidence from which a jury might return a verdict in his favor."  *Id.* at 257.

I.     *Coverage for Emotional Injuries*

Central to Defendant's motion is the issue of whether the emotional injuries Plaintiffs suffered from the accident along with the physical injuries are recoverable under the insurance policy.  It is undisputed that the relevant policy provides UIM coverage only for "bodily injury and property damages."  *Doc. 52* Ex. J at 1.  The policy defines "bodily injury" as bodily injury to a person, including resulting sickness, disease or death."  *Id.*  Defendants contend that this language excludes coverage of the emotional damages claimed by Plaintiffs, and, thus, Plaintiffs' claims based on emotional damages must fail.  *Doc. 52* at 7-8.  Plaintiffs argue that, because they suffered "bodily injuries [] sufficient to satisfy the policy," their other injuries," even if [they] are characterized as emotional," are covered.  *Doc. 59* at 6.

When sitting in diversity, this Court must apply the law of the forum state. *Mincin v. Vail Holdings, Inc.*, 308 F.3d 1105, 1108 (10th Cir. 2002).  Ordinarily, the Court must rely upon the holdings of the highest court of the forum state in determining the law of the forum state.  *Haltom v. Great Nw. Ins. Co.*, No. 10-6258, 2012 U.S. App. LEXIS 1888, at *14 (10th Cir. Feb. 2, 2012).  However, having reviewed the cases cited by the

5

parties, the Court concludes that the New Mexico Supreme Court has not definitely ruled on the issue presented. Therefore, the Court "'must endeavor to predict how th[e] high court would rule' by considering the rulings of th[e] state's intermediate courts." *Id.* (quoting *Johnson v. Riddle*, 305 F.3d 1107, 1118-19 (10th Cir. 2002).

Thankfully, several opinions from New Mexico courts provide guidance. This guidance begins with the most significant ruling from the New Mexico Supreme Court, *Gonzales v. Allstate Ins. Co.*, 122 N.M. 137 (1996). In *Gonzales*, a wife sought to recover for her own loss of consortium after her husband was killed when he was hit by a vehicle. *Id*. at 138. The wife, who was not hurt or even present at the accident, argued that her loss of consortium was a "bodily injury" to her and therefore covered by her own UM/UIM insurance. *Id*. The *Gonzales* court confirmed that an "insurance claim arises from the policy language," and looked to the policy definition of "bodily injury." *Id*. at 140. The definition was identical to the one in the instant case. The New Mexico Supreme Court held that "[w]ithout doubt, loss of consortium, without any physical manifestation, is an emotional injury. By its plain meaning, 'bodily injury' constitutes injury to the physical body rather than mental and emotional injuries. We detect no ambiguity in the language used in the policy . . . ." *Id.*

Subsequently, the New Mexico Court of Appeals was called upon to consider the breadth of the *Gonzales* holding. *See generally Economy Preferred Ins. Co. v. Jia*, 135 N.M. 706 (Ct. App. 2004). In *Jia*, a drunk driver hit several pedestrians and killed the

6

plaintiff's mother. *Id.* at 707. The plaintiff was not hit but witnessed his mother's injuries. *Id*. The plaintiff did not suffer any physical injury from the impact, but he did exhibit "hysterical crying, uncontrollable shaking and various sleep difficulties." *Id*. at 709. The coverage hinged on whether the plaintiff's emotional injuries constituted "bodily injury" under the relevant insurance policy. *Id*. at 707-10. Again, the definition of "bodily injury" was essentially identical to the one in the instant case. *Id*. The court recognized that the *Gonzales* court had held that "bodily injury" does not include "mental and emotional injuries." *Id*. However, the court concluded that "*Gonzales* left open the possibility that where an emotional injury is accompanied by physical manifestation, the injury might constitute bodily injury." *Id*. at 709 (quoting *Gonzales* "without any physical injury" proviso). The court then analyzed whether the manifestations alleged by plaintiff constituted bodily injury. In that analysis, the court noted that "it is not an easy task to separate emotional injuries, physical injuries, and their respective causes. Nevertheless, to interpret the terms of the policy, we must differentiate between bodily injury and emotional injury; the alternative would be to extend coverage for bodily harm to all emotional injury, a result that is inconsistent both with precedent and with common-sense notions of what a reasonable insured would understand from the policy language." *Id*. at 710 (citations omitted). In the end, the court concluded that plaintiff's manifestations of emotional injury were insufficient to constitute "bodily injury." *Id*. at 709-10.

The New Mexico Court of Appeals again considered this issue in *Hart v. State Farm Mut. Ins. Co.*, 145 N.M. 18 (Ct. App. 2008). In *Hart*, a child was sexually molested in an uninsured motor vehicle. *Id*. at 19. As a result of the molestation, the child suffered from sleep disruption, cognitive confusion, and an inability to concentrate, as well as anxiety, low self-esteem and personality changes. *Id*. at 19-20. The injuries "did not include any physical injury such as bruises, scrapes, or cuts." *Id*. at 19. The question presented in the case was whether the plaintiff could recover under insurance policy language covering "bodily injury." *Id*. at 19-21. The definition of "bodily injury" was identical to the one in the instant case. *Id*. at 19. The court reiterated that "'under New Mexico law, this definition of bodily injury unambiguously excludes emotional injury' and that the UM policy afforded no coverage for the child's emotional damages unless his injury was physical in nature."

The plaintiff argued that "she suffered an impairment of the functions of her brain – an organ of the body – and therefore has suffered a bodily injury." *Id*. at 21. The court, however, held that alleged injuries were not covered under a "bodily injury" policy and granted summary judgment for the insurer. *Id*. at 21.

The instant case is distinguishable from these cases because each Plaintiff suffered some level of physical injuries in the accident that took Marcos Lopez's life. *See doc. 52* at 3-5 ¶¶ 5, 9, 14 (noting that Plaintiffs suffered physical injuries as well); *see also doc. 59* at 2 (contending that emotional damages flowed from physical injuries). So,

8

the question is whether that distinction means that Plaintiffs can recover for the emotional damages which occur as a result of the accident. Several reasons convince this Court that it does not.

First, the fact that, despite several opportunities, no New Mexico appellate court has held that emotional injuries are recoverable under a "bodily injury" policy.[4] While each fact pattern is distinct from the instant one, it is persuasive that every attempt by a plaintiff to fit emotional injury into this term has been rejected by the New Mexico courts.

Second, the rationale of the cases analyzed above is grounded in the recognition of a meaningful difference between emotional and physical injuries. Physical injuries are covered under the "bodily injury" policy language and emotional injuries are not. While *Gonzales* left open the idea that "physical manifestations" of emotional injury might qualify as "bodily injury," Plaintiffs' alleged physical injuries do not seem to fit into this exception even assuming it exists. "Manifestation" means "an indication of the existence, reality or presence of something." *American Heritage Dictionary* 1064 (4th ed. 2000). Thus, the physical manifestation of an emotional injury would be some physical problem which indicates an underlying emotional problem. *Cf. Folz v. State*, 110 N.M. 457, 469 (1990) (explaining that requirement of "physical manifestation" means that the

---

[4] Plaintiffs point to *State Farm Mut. Auto Ins. Co. v. Luebbers*, 138 N.M. 289 (2005). However, *Luebbers* did not involve the same coverage issue because the policy covered "all damages flowing from bodily injury to insureds, including derivative claims such as loss of consortium." *Id*. at 293.

9

"physical injury result[s] from the emotional harm . . . ."). One example would be a rash caused by emotional distress. In such a case, the rash could be said to indicate the reality of the emotional distress. However, the only "physical" injuries suffered by the Plaintiffs are the one which were caused by the automobile accident. *See doc. 52*, ¶¶ 5, 6, 9, 10, 13, 14; *see also doc. 59* (Plaintiffs' response points to no other physical injuries). These physical injuries cannot be said to be "physical manifestations" of the underlying emotional distress. Therefore, even assuming that the New Mexico Supreme Court would hold that emotional injuries with physical manifestations are covered by "bodily injury" policies, Plaintiffs' emotional injuries would not be covered.

Third, the New Mexico Court of Appeals has rejected the argument that emotional distress damages, when otherwise not recoverable, become recoverable simply because some physical injury was simultaneously suffered. *See Montoya v. Pearson*, 140 N.M. 243 (Ct. App. 2006). As explained above, the physical injuries suffered by Plaintiffs' physical injuries are not so much physical manifestations of emotional injury as injuries which occurred as a result of the same accident which caused the emotional distress. As such, the argument that the existence of the physical injury should make the emotional injury recoverable is similar to the issue addressed in *Montoya*.

In *Montoya*, the plaintiff was driving a motorcycle with his fiancée as his passenger. *Id*. at 244. A car accident caused the plaintiff to be thrown from the bike

10

while running over and killing the passenger. *Id*. Among other claims, the plaintiff sued for negligent infliction of emotional distress ("NIED") premised on witnessing the victim's death. *Id.* Because New Mexico courts have recognized negligent infliction of emotional distress in one limited circumstance which the plaintiff did not satisfy, the plaintiff argued that he should be able to recover because he suffered both physical and emotional injuries in the accident. *Id*. The *Montoya* court rejected this theory of recovery explaining that "the field of emotional distress damages [has been] 'carefully circumscribed' by [the New Mexico] Supreme Court . . . ." *Id.* at 245. The court further reasoned that examples abound where an individual could suffer a "physical injury that is a random occurrence that bears no real relationship to the emotional injury" and that, under such a rule, recovery would become "dependent on whether the plaintiff happens to suffer a fortuitous and unrelated injury." *Id.* at 247-48. The reasoning of *Montoya* militates against the idea that emotional injury, simply because it occurred alongside a physical injury, is transformed from damages that are not recoverable under a bodily injury policy into damages that are recoverable under such a policy.[5]

---

[5] The Court recognizes that New Mexico permits NIED claims in cases where "an individual . . . suffers emotional distress 'from the contemporaneous observation of an accident involving a close family member.'" *Montoya v. Pearson*, 140 N.M. 243, 245 (Ct. App. 2006). Therefore, if the question was whether Plaintiffs could make an NIED claim in this case, New Mexico law would support their claim. In *Economy Preferred Ins. Co. v. Jia*, 135 N.M. 706, 707 (Ct. App. 2004), the child plaintiff contemporaneously observed the accident that killed his mother. As such, he could pursue an NIED claim. The *Jia* court, however, still rejected recovery under the insurance policy explaining that the "ability to state a claim for NIED does not determine the meaning of bodily injury within the terms of the policy." *Id*. at 710. The only difference between *Jia* and the instant case is that Plaintiffs suffered physical injuries at the same time they suffered their emotional injuries. The *Montoya* court concluded that emotional injury does not

For these reasons, this Court concludes that the New Mexico Supreme Court would hold that emotional injury, even if received alongside a physical injury, is not recoverable under the bodily injury policy in the instant case.

## II.    *Possibility of Recovery under Loss of Consortium Theory*

Defendant next argues that Plaintiffs also cannot recover for what could be considered emotional injuries under a loss of consortium theory. *Doc. 52* at 8-11. Based upon *Gonzales v. Allstate Ins. Co.*, 122 N.M. 137 (1996), Defendant contends that "any claims for loss of consortium that Plaintiffs may have had due to the loss of Marcos Lopez were subsumed under the policy limits settlement of $300,000" with the estate. *Doc. 52* at 11. Therefore, "any loss of consortium claims Plaintiff may now claim are subject to the 'per person' limit, and that limit has been paid." *Id*.

Defendant's reasoning appears correct under New Mexico law. Moreover, Plaintiffs have never disputed this point or otherwise argued that they have viable loss of consortium claims. As such, they have waived any opposition to this argument. *See Schepp v. Fremont County*, 900 F.2d 1448, 1454 n.7 (10th Cir. 1990); *see also National Wrecking v. Spangler*, 782 F.2d 101, 104 (7th Cir. 1986); *Liberles v. Cook County*, 709 F.2d 1122, 1126 (7th Cir. 1983). As such, the Court concludes that they cannot recover for emotional distress under a loss of consortium theory.

---

become recoverable when it otherwise would not be simply because it was suffered at the same time as physical injury. As such, its reasoning undermines Plaintiffs' argument.

12

**III.   Must Summary Judgment Follow?**

Of course, the question remains whether, simply because Plaintiffs cannot recover for emotional injury, "summary judgment on Plaintiffs' claims seeking UIM benefits" must follow.

Defendants argue that all three individual Plaintiffs "have been fully compensated for their bodily injuries." *Doc. 64* at 4; *see also doc. 52* at 12-13. Defendant points to the fact that each of their settlements compensates them far in excess of their medical bills. *Doc. 64* at 4 ("Analisa and Nicholas received settlement amounts greater than ten times the amount of their medical bills. Susan received an amount roughly 25 times the amount of her medical bills.") Moreover, Defendant describes their physical injuries and subsequent treatment, and contends that no "rational trier of fact [could] find that Plaintiffs are entitled to additional benefits." *Doc. 52* at 12; *Doc. 64* at 4.

The amount of the medical bills incurred by each Plaintiff is undisputed, but the amount of pain and suffering is disputed. Based on the undisputed nature of Plaintiffs' injuries, it does appear unlikely that a factfinder would award them an amount of pain and suffering which, when added to their medical bills, would exceed the liability coverage.[6] However, based on the limited record, the Court cannot hold that no

---

[6] Plaintiffs have settled their liability claims. In order to recover under their UIM claims, they concede that the factfinder must find that their physical injuries exceed the full liability limits applicable to them. *See doc. 59* at 5.

rational trier of fact could do so.[7]  Therefore, summary judgment on this basis would be inappropriate.

IV.     **Impact of Settlements for Less than Liability Policy Limits**

As to Plaintiffs Analisa and Nicholas Lopez, Defendant argues that they "have no claims for UIM benefits because they have settled for less than liability limits."  *Doc. 52* at 11.  Defendant's argument is based on the relevant policy which provides that no UIM benefits will be paid until the underlying liability policy has been exhausted.[8]

"Exclusionary provisions in insurance contracts shall be enforced so long as their meaning is clear and they do not conflict with statutory law.  But when an insurance provision does conflict with a statute, it is void."  *State Farm Mut. Auto. Ins. Co. v. Luebbers*, 138 N.M. 289, 294 (Ct. App. 2005) (citations and quotations omitted).  Plaintiffs argue that the policy language relied upon by Defendant conflicts with New Mexico Uninsured Motorist Act.  *See* N.M. Stat. Ann. § 66-5-301 et seq.  In circumstances which fall within that statute, "the only limitations on protection are those specifically set out

---

[7] For example, in this case it appears that the physical injuries suffered by Susan, Nicholas and Analisa are similar.  *See doc. 64* at 5 (citing Dr. Roll's report indicating that "all Plaintiffs, except for Marcos, 'sustained minor physical injuries' in the tragic accident").  Yet, the settlement values were quite disparate.  *See doc. 52* at 12 ("Susan Lopez, individually, entered into a liability policy limits settlement with Defendant in the amount of $100,000.  The New Mexico district court approved Analisa's and Nicholas's settlement with Defendant in the amount of $32,500 each.")  While there are likely myriad explanations why Defendant valued the physical injury Susan experienced so differently than that experienced by the children, it demonstrates the peril of concluding that no rational factfinder could reach a very different result when asked to value pain and suffering.

[8] "We shall not be obligated to make any payment because of bodily injury to which this insurance applies and which arise out of ownership, maintenance or use of and underinsured motor vehicle until after the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements."  *Doc. 52*, Ex. J, Sec. IV.

14

in the statute itself: that the insured be legally entitled to recover damages and that the negligent driver be uninsured or underinsured." *Farmers Ins. Co. of Arizona v. Sandoval*, 149 N.M. 654, 657 (Ct. App. 2011) (quotations and citations omitted). Perhaps in an attempt to fall outside the reach of this proposition, Defendants state that their provision "does not relieve Defendant of any obligation to provide mandatory coverage." *Doc. 64* at 7. Nevertheless, the provision does seek to relieve Defendant of the obligation to pay for injuries for which it has provided coverage. As such, it is functionally a "limitation on protection" and can be properly viewed as such. Therefore, to the extent that the "exhaustion" provision would limit Plaintiffs' recovery below what they are legally entitled to recover,[9] it may conflict with New Mexico law.

However, as Defendant repeatedly points out, the minor Plaintiffs did settle their claims at less than the liability limit, and that settlement was approved by a state district judge. These facts may bar additional recovery under theories such as waiver, estoppel, and accord and satisfaction. If these or other defenses would mean that Plaintiffs' are not "legally entitled to recover" additional damages, then, as applied here, this clause would not conflict with New Mexico law. Yet these theories have not been expressly presented or briefed. Consequently, this Court cannot determine whether, in this case, the exhaustion clause should be void as contrary to New Mexico law. Because the

---

[9] Defendant does not dispute that the negligent driver was "underinsured" under the statutory meaning of that term.

15

burden is on the movant, the Court will therefore deny summary judgment on this basis.

### *Conclusion*

This Court concludes that the New Mexico Supreme Court would hold that emotional injury, even if received alongside a physical injury, is not recoverable under the bodily injury policy in the instant case.  Moreover, Plaintiffs cannot recover for emotional distress under a loss of consortium theory.  Nevertheless, these conclusions do not dictate that summary judgment is proper.  A rational factfinder could find that Plaintiffs' physical injuries, including pain and suffering, would exceed the applicable liability limit.  Therefore, summary judgment cannot be granted.  Moreover, based on the parties' briefing, the Court will not grant summary judgment based on the minor Plaintiffs' failure to exhaust the liability policies.

Wherefore, **IT IS HEREBY ORDERED** that Defendant's Motion for Partial Summary Judgment on Plaintiffs' Claims for Underinsured Motorist Benefits, (*doc. 52*), is **DENIED**.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**