IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SUSAN LOPEZ, as personal representative of
the Estate of Marcos Lopez and SUSAN LOPEZ
on her own behalf, and as guardian of her minor
children, NICHOLAS LOPEZ and
ANALISA LOPEZ,

    Plaintiffs,

v.                                                      No. CIV 11-633 GBW/RHS

GEICO INSURANCE COMPANY,

    Defendant.

**ORDER**

The matter is before the Court on Defendant's Motion to Exclude the Testimony of Dr. Brian McDonald (*doc. 170*); Plaintiff's Motion in Limine (*doc. 171*); and Defendant's Motion to Exclude Charles Miller's Trial Testimony (*doc. 199*). The Court, having considered the briefing, evidence, and relevant law, and otherwise being fully advised, finds as follows.

**I.    STANDARD OF REVIEW**

Federal Rule of Evidence 702 provides that an expert may testify in the form of an opinion or otherwise if:

    (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact

      in issue;

      (b) The testimony is based on sufficient facts or data;

      (c) The testimony is the product of reliable principles and methods; and

      (d) The expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Rule 702 incorporates the principles of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd v. Carmichael*, 526 U.S. 137 (1999), to ensure that proffered expert testimony is both relevant and reliable. *See* FED. R. EVID. 702, 2000 Amendments.

    *Daubert* challenges, like other preliminary questions of admissibility, are governed by Federal Rule of Evidence 104. *United States v. Turner*, 285 F.3d 909, 912-13 (10th Cir. 2002). To determine whether an expert opinion is admissible, the district court performs the following two-step analysis: (1) the court must determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion; and (2) if the expert is so qualified, the court must determine whether the expert's opinion is reliable and helpful under the principles set forth in *Daubert*. *See 103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006).

    In addition to satisfying Rule 702 and *Daubert*, proffered expert testimony must also pass muster under Federal Rule of Evidence 403. Trial courts have broad discretion in determining the admissibility of expert testimony. *See United States v. Velarde*, 214 F.3d 1204, 1208 (10th Cir. 2000) (reviewing court's admission of expert testimony for

abuse of discretion). The court's discretion is equally broad in deciding both how to assess an expert's reliability--including what procedures to use in making that assessment--and in making the ultimate determination of reliability. *Id.* at 1208-09. The district court has no discretion as to the actual performance of its gate-keeping function. *Turner*, 285 F.3d at 913.

II. ANALYSIS

    A.    Dr. Brian McDonald

Plaintiff seeks to introduce the testimony of economist Dr. Brian McDonald on the appropriate measure of punitive damages to be assessed against Defendant. *Doc. 170*, Ex A at 1. According to Dr. McDonald, the appropriate measure of punitive damages can be determined by analogizing them to a speeding ticket because "the . . . speeding ticket represents an economic burden to the average driver" that is designed to penalize and deter in the same way as punitive damages. *Id.* at 2. Since a speeding ticket fine in New Mexico constitutes .29% of the average annual New Mexican's wage, that same metric should be applied to Defendant's 2012 income before taxes, resulting in a proposed award of $1.972 million. *Id.* Defendant argues that punitive damages are not properly the subject of expert testimony, citing *Voilas v. General Motors Corp.*, 73 F. Supp. 2d 452 (D.N.J. 1999) and *Hayes v. Wal-Mart Stores, Inc.*, 294 F. Supp. 2d 1249 (E.D. Okla. 2003). The Court agrees with the Defendant and will exclude this proffered opinion testimony from Dr. McDonald.

The admissibility of expert testimony is inextricably linked to its helpfulness to the trier of fact. *Wilson v. Muckala*, 303 F.3d 1207, 1219 (10th Cir. 2002). " 'When the normal experiences and qualifications of laymen jurors are sufficient for them to draw a proper conclusion from given facts and circumstances, an expert witness is not necessary and is improper.' " *Id.* (quoting *Frase v. Henry*, 444 F.2d 1228, 1231 (10th Cir. 1971)). As the court explained in *Voilas,* punitive damages are entirely within the purview and ability of a jury to determine because they involve social, rather than economic concerns, and the assessment of those damages does not require any particular expertise. 73 F. Supp. 2d at 468-69; *see also Hayes* ("The Court agrees with the well-reasoned conclusion in *Voilas v. General Motors Corp.*, 73 F.Supp.2d 452, 464 (D.N.J.1999) that 'the assessment of possible ranges of punitive damages is not a proper subject for an expert's report or testimony'"), *Anderson v. Boeing Co.*, 2005 WL 6011245 (N.D. Okla. August 2, 2005).

The Court sees nothing in Dr. McDonald's expert opinion that would lead it to disagree with the reasoning set forth by *Voilas* and subsequent case law. *See Baldonado v. Wyeth*, 2012 WL 1520331, at *3 (N.D. Ill. April 30, 2012) (excluding expert opinion on punitive damages based upon extrapolation of a speeding ticket to the assessment of punitive corporate damages). Therefore, the Court will exclude Dr. McDonald's testimony regarding his opinion as to the punitive damages in this case

Outside of this opinion, Plaintiff seeks to have Dr. McDonald testify about GEICO's financial position. Over the objection of Defendant, the Court will admit Exhibits 62 and 63, which are GEICO's annual statements for 2011 and 2012, as relevant evidence for determining an appropriate amount of punitive damages. *See, e.g., Atencio v. City Albuquerque*, 911 F. Supp. 1433, 1446-47 (D.N.M. 1995). The Court will permit Dr. McDonald to testify as a fact witness regarding the contents of those annual statements so as to highlight the information which reflects GEICO's financial capacity. However, he may not express any expert opinion in this regard, including as to the profitability or liability of GEICO's UM/UIM policy coverage.

B.    Mr. Garth Allen

Defendant seeks to have Mr. Garth Allen opine on the "reasonableness of GEICO's conduct in adjusting [Plaintiff's] claim and responding to Plaintiffs', and their attorney's, demands." *Doc. 180,* Ex. A at 4. Mr. Allen would testify on the following areas:

1. That prior to 2010,[1] it was common practice for New Mexico insurers to provide minimum limits of UM/UIM coverage where the insured otherwise failed to elect coverage limits (*doc. 180*, Ex. A at 5);
2. That this practice was premised on the "good faith belief" that insureds should not be charged for more coverage than they agreed to pay (*id.*);
3. That GEICO had "no self-serving reason" to set the UM/UIM coverage at 25/75 rather than 100/300 (*id.*);

---

[1] Plaintiff purchased the insurance at issue in March 2009.

4. That "nothing about the policy declaration sheet could trick or dupe" Plaintiff into believing his coverage was 100/300 instead of 25/75 (*id.*);
5. That when GEICO altered its policy in light of *Jordan v. Allstate Ins. Co.*, 245 P.3d 1214 (2010)), it was "giving maximum consideration" to the rights and interests of Plaintiff (*id.*);
6. That GEICO did, in fact, conduct a timely and thorough investigation of Plaintiff's claim (*id.* at 6); and
7. That GEICO had no obligation to reform its coverage so that UM/UIM coverage limits equaled insured motorist coverage until after *Jordan* was decided in October 2010 (*id.*).

Plaintiff argues that each of Mr. Allen's above listed opinions lack foundation and reliability.

### i. Common Practice of New Mexico Selling UM/UIM Coverage Prior to 2010 (Opinion 1)

Mr. Allen states that "it was common in New Mexico, prior to the *Jordan* case, in October of 2010, for insurers to provide minimum limits of UM/UIM bodily injury coverage until such time as the insured made a different selection." *Doc. 180*, Ex. A at 5. The basis for his opinion on this practice is his extensive experience in the insurance industry. As the Tenth Circuit has explained, an expert witness's testimony may arise solely from his own experience, but where that is the case, "the [expert] witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Nacchio*, 555 F.3d 1234, 1258 (10th Cir. 2009) (internal quotation and citation omitted).

In his deposition, Mr. Allen stated that his opinion is based on "generally being aware of sales procedures [at other large insurance companies]" and "lots and lots of years in the [insurance] industry." *Doc. 180,* Ex. D at 77:11-78:13.  Further, Mr. Allen testified extensively as to his thirty years of experience working at major insurance companies, consulting on these sales procedures for major insurance carriers such as State Farm and Progressive, teaching these sales procedures at the university level, and researching and presenting these procedures both academically and in a professional context, at the *Daubert* hearing held on October 4, 2013.  *Doc. 218.*   Based on these extensive qualifications, the Court is satisfied as to the foundation of Mr. Allen's opinion as to the New Mexico personal auto insurance industry practices in the sale of UM/UIM coverage prior to 2010, and will admit this testimony.

### ii.     GEICO's Motivations Regarding UM/UIM Coverage (Opinions 2, 3, 5)

Defendant also seeks to have Mr. Allen testify that this pre-2010 practice was motivated by a "good faith belief" that insureds should not be charged for more coverage than they agreed to pay (*doc. 180,* Ex. A at 5) and accordingly, that Defendant had no self-serving reason to set the UM/UIM coverage at minimum limits rather than matching it to a higher coverage level.  In his expert report, Mr. Allen bases his opinion on the fact that it is "axiomatic that insurance companies . . . are . . . motivated to sell

more, not less, insurance."[2] *Id.* at 5.  He also contends that Defendant altered its policy post *Jordan*, to "giving maximum consideration to the rights and interests of Plaintiff." *Id.*  But Mr. Allen has not demonstrated that he has any specific experience regarding what motivated Defendant's policy making.  His opinion arises, as he testified at the *Daubert* hearing, from his general experience in the insurance industry and his common sense analysis. *See Hauff v. Petterson*, 755 F. Supp. 2d 1138, 1148 (D.N.M. 2010) ("Though a proffered expert possesses knowledge as to a general field, the expert who lacks specific knowledge does not necessarily assist the [fact-finder].") (citation omitted). The Court finds Mr. Allen lacks sufficient basis on which to opine on the motivations of Defendant.  As such, his testimony as to these opinions is excluded.

### iii.     Clarity of the Policy Declaration Form (Opinion 4)

Mr. Allen states that "nothing about the policy declaration sheet could trick or dupe" Plaintiff into believing his coverage was set at minimum limits. This particular opinion is beyond his expertise.  While he may opine that the form met or exceeded industry standards, he has insufficient basis to opine that the form could not trick or dupe an insurance purchaser.

---

[2] Mr. Allen's opinion in this regard is premised upon another opinion Defendant seek to admit: that UM/UIM coverage is a profitable line of coverage for Defendant.  After hearing his testimony at the Daubert hearing, the Court is not persuaded that he possesses a sufficient basis to render such an opinion.  As such, it too will be excluded.

### iv. Defendant's Obligations before *Weed Warrior/Jordan* (Opinion 7)

Mr. Allen further opines that Defendant had no obligation to reform its policy to reflect higher coverage limits until the New Mexico Supreme Court decided *Progressive North Western Ins. Co.* v. *Weed Warrior Servs.*, 245 P.3d 1209 (2010) and *Jordan*. However, the applicable coverage is one of the central issues of dispute in this case. While Rule 704(a) permits expert testimony that "embraces an ultimate issue to be decided by the trier of fact," an expert may not state his opinion as to legal standards, nor may he state legal conclusions drawn by applying the law to the facts. *Okland Oil Co. v. Conoco, Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998) (citing *A.E. ex. Rel. Evans v. Indep. Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir. 1991)). "Expert testimony of this type is often excluded on the grounds that it states a legal conclusion, usurps the function of the jury on deciding the facts, or interferes with the function of the judge in instructing the jury on the law." *United States v. Simpson*, 7 F.3d 186, 188 (10th Cir. 1993) (citing *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988)). Such expert testimony does not assist the jury to "understand the evidence or to determine a fact in issue." FED. R. EVID. 702. Under New Mexico law, "[o]nce the agreement is found to be ambiguous, the meaning to be assigned the unclear terms is a question of fact . . . . The factual issues, if any, presented by an ambiguity must be resolved by the jury." *Mark V, Inc. v. Mellekas*, 845 P.2d 1232, 1235 (1993). While Mr. Allen may testify that it was industry-practice and/or reasonable not to reform

Plaintiff's coverage before those cases, he may not opine that they had no obligation to do so.

### v. Defendant's Investigation of the Claim (Opinion 6)

Mr. Allen states that Defendant did, in fact, conduct a timely and thorough investigation of Plaintiff's claim (*doc. 180,* Ex. 4 at 6). For the same reasons set forth in Section B(i), *supra*, Mr. Allen is qualified to opine on standard practices in the industry, including the timeliness of Defendant's claims based on his industry expertise.

### C.   Mr. Charles M. Miller

Plaintiff seeks to introduce the testimony of Mr. Miller to demonstrate that Defendant's handling of Plaintiff's claim fell below industry standards and that Defendant deliberately set UM/UIM coverage to a low default because it was more profitable for Defendant. *Doc. 199*, Ex. B; *doc. 213* at 3-4. Defendant objects only to Mr. Miller's testimony as to the profitability of UM/UIM coverage, and does so on three bases: (1) Plaintiff has violated Federal Rule of Civil Procedure 26(a)(2) by failing to disclose Mr. Miller's testimony as to GEICO's profit/loss ratios; (2) Mr. Miller, as an attorney and claims handler, is not qualified to testify as to financial matters pertaining to Defendant; and (3) Mr. Miller does not have proper data from which he can provide testimony as to Defendant's profit/loss ratios. *See generally doc. 199*.

Plaintiff contends that the term "Loss Ratio" is well established in the insurance industry, and that Mr. Miller, as someone highly experienced in the insurance industry,

can testify to the meaning of the metric (an assessment of profitability), and compare the metric from year to year. *Doc. 211* at 2-3. Plaintiff argues that "the jury should be allowed to consider these increased claims expenses as a reason why Defendant intentionally sold UM/UIM coverage in amounts below liability amounts." *Id.* at 3. Further, Plaintiff justifies the late submission of this portion of Mr. Miller's testimony by noting she did not have the requisite information from Defendant on this subject until after the Court granted Plaintiff's Motion to Compel on July 12, 2013 (*see doc. 174*).

A review of Mr. Miller's *curriculum vitae* shows that Mr. Miller has extensive experience in the insurance industry as a claims adjuster and in the practice of law, but there is no indication that he has underwriting experience or any other kind of specific experience with Defendant that would allow him to opine as to the profitability of Defendant's UM/UIM coverage. At the *Daubert* hearing, the Court made further inquiry into Mr. Miller's qualifications to render such an opinion. It would appear that, as with Mr. Allen, Mr. Miller lacks a sufficient basis to opine as to the profitability of Defendant's UM/UIM coverage. As such, the Court indicated its intention to exclude Mr. Miller's expert opinion as to profitability subject to a sufficient proffer.

**III.     CONCLUSION**

For the forgoing reasons, the testimony of Dr. McDonald, Mssrs. Allen and Miller will be limited in accordance with this order.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**